IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HILDA S. JOURDAN, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } CIVIL ACTION NO. H-99-4081 |
| SCHENKER INTERNATIONAL, INC., | }<br>} |
| Defendant. | }<br>} |

**ORDER**

Pending before the court is Defendant, Schenker International, Inc.'s ("Schenker") Motion for Summary Judgment (Doc. 105), as well as Plaintiff, Hilda S. Cosman's (previously Hilda Jourdan, hereinafter "Cosman" or "Plaintiff") opposition thereto (Doc. 114), and Schenker's Motion in Limine (Doc. 104) Motion for Sanctions (Doc. 111), and Motion for Clarification of Order and for Expedited Consideration of such Motion. (Doc's 121-1 and 121-2.)

**I.         Legal Standard : Summary Judgment**

A movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R.Civ. P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

**II.     The Court's Prior Memorandum and Order of Summary Judgment**

The instant action was filed in the 334th Judicial District of Harris County, Texas on October 15, 1999, and was removed to this court on diversity grounds on November 23, 1999. (Doc. 1.) On February 22, 2002, Defendant, Schenker filed its first Motion for Summary Judgment. The court subsequently granted this Motion. (Doc. 57.)

As part of this initial background, the court will only briefly review the facts of the case as they have been repeated in detail several times. Plaintiff was previously employed as a salesperson by Schenker USA, a freight forwarding company, from 1989 until she was terminated in November 1999. From approximately December 1997 until April 1998, Plaintiff devoted her time toward helping to obtain an new account for Schenker with a Venezuelan oil company, Bariven S.A. ("Bariven" otherwise reference is to the "Bariven Account"). After a contract with Bariven was executed, Plaintiff was removed from Bariven Account in 1998. After the Bariven Account was brokered, it did not earn a profit in 1998, but did so in 1999.

The core of this suit centers about a Sales Incentive Program (the "Sales Program") which became effective on May 29, 1998, retroactive to January 1, 1998. (Doc. 31, Exh. 4.) There is no dispute that under this Sales Program, after 30 months of employment, a salesperson had to obtain a minimum gross profit on her accounts equal to four times her total salary and fringe benefits to earn an incentive payment. (Doc. 57, p. 12.) While Plaintiff would not receive an incentive payment if gross profits were three times her salary and fringe, she would receive a 7% incentive payment for gross profits between three and four times her salary and fringe, and a 10% payment above four times salary and fringe. (*Id*.) Plaintiff asserts in this suit that she was the salesperson to be credited with gross profits on the Bariven Account for the purposes of calculating sales commissions under the Sales Program.

Language in the Sales Program states: "[A] sales person maintains an account for as long as management deems necessary." (Doc. 31, Exh. 4.) The court noted in its first Order on Summary Judgment that "the [Sales Program document] provides no objective criteria nor

- 3 -

describes any kinds of circumstances to define what would constitute necessity for such a transfer of an account." (Doc. 57, n. 10.) This point is important because if a salesperson no longer counts a customer's account as her own, having been removed from it, she would not be entitled to commissions on the account thereafter. Previously, the court found that *if* the Sales Program was a contract or a part of one, as between Plaintiff and Schenker, "necessary" was a material, unclear, undefined, and ambiguous term as evidenced by this dispute, because the term or terms could not be given a definite legal meaning, were reasonably susceptible to more than one meaning, and parole evidence would therefore be admissible to determine the parties' intentions. (*Id*.) The court noted that the parties disputed whether Plaintiff was ever removed from the Bariven Account, which allegedly occurred in approximately August 1998, not to mention whether such removal was necessary under the circumstances; and, the court noted, "the conflicting parole evidence would present issues of fact for trial." (*Id*.) The court also noted Schenker had refused to even concede that Plaintiff was ever assigned to the Bariven account, so as to fall under the Sales Program, and Schenker argued that even if she had been so assigned she was not entitled to any future sales incentive payments relating to that account after she was removed from the account. (*Id*. at pp. 13-14.)

The court made several other holdings in its Order on Summary Judgment, having reviewed the record as it then stood in some detail. With respect to her breach of contract claim, the court noted in its prior Order, as stated *supra*, the threshold issue whether Plaintiff was ever assigned the Bariven account. (*Id*. at pp. 33-34.) The court also noted that Plaintiff's evidence on this issue was unsupported by any corroborating evidence other than her own self-serving testimony, though the court admitted at the time that this was acceptable, all reasonable inferences being drawn in her favor. (*Id*.) The promises she alluded to occurred behind closed doors, and although she conclusorily asserted that everyone in the company understood Bariven to be her account, the court noted that at that time, she failed to produce a single affidavit from anyone supporting her statement. (*Id*.) Nevertheless, relying on her testimony, affidavit, and single memo,

the court gave her the benefit of the doubt, and found she had raised a genuine issue of material fact at least with respect to the ownership of the Bariven account. (*Id*. at 34.)

The court also found that Plaintiff's claim for promissory estoppel failed because she could not have relied on the 1998 Sales Program for her work on the Bariven project, as the Sales Program was instituted only in January 1998; Plaintiff had begun working on the Bariven project prior to 1998. (*Id*. at p. 33.) At the time of the summary judgment, Plaintiff also had pending a count for specific performance, however, by failing to assign as error on appeal all but one claim for breach of contract, Plaintiff limited her case upon remand solely to her breach of contract claim. With respect to enforcing any supposed contract between Plaintiff and Schenker, this court constrained itself to the 1998 Sales Program, the only basis for a contract which Plaintiff had properly pled, and the court eventually concluded that summary judgment was appropriate because the promise of commissions contained in this Sales Program supporting her claim for commissions was illusory as a matter of law and did not constitute a contract. (*Id*. at pp. 34-37.) Central to the court's analysis at the time had been the undisputed fact that Plaintiff had been an employee-at-will for Schenker, and that any promise to pay commissions conditioned on continued employment, or for which the consideration provided was a period of continued employment, could not bind the promisor (Schenker), who always retained the option of discontinuing the employment. (*Id*. at pp. 35-36.)

### III.     Appeal to the Fifth Circuit Court of Appeals and Remand

The instant action was subsequently appealed and the Fifth Circuit Court of Appeals concluded

> there is at least a genuine issue of material fact with respect to the meaning of the sales-incentive plan..., specifically whether Jourdan had accrued a right under the plan to commissions on sales that had occurred prior to the termination of her employment with Schenker. (*Jourdan v. Schenker Int'l*, 71 Fed. Appx. 308, 2003 U.S. App. LEXIS 15203, *2 (5th Cir. 2003); *See also* Doc. 64.)

The Court of Appeals noted that this court had also found genuine issues of material fact as to (1) whether Plaintiff was actually ever fully removed from the Bariven account, and (2) whether, and

under what circumstances, Schenker had the right to remove a sales representative from an assigned account. (Doc. 64, n. 2.) The Court further noted that because Schenker had not assigned as error the first issue, regarding when removal was proper, it declined to address whether Plaintiff was ever removed from the Bariven Account:

> For this reason, we decline to address if, or when, Jourdan was removed from the Bariven account. And because that question is the logically prior one, we also decline Schenker's invitation to hold that the district court erred in concluding that there was a genuine issue of fact concerning whether Schenker had discretion to remove Jourdan from the account, and we instead leave Schenker to pursue these avenues of argument on remand. (*Id*.)

The court also noted

> Schenker also disputes whether Jourdan was ever assigned to the Bariven account for purposes of earning a commission under the sales-incentive plan. The district court, however, did not resolve this issue, nor is this matter directly before us. Instead, we assume for present purposes that Plaintiff was assigned to the Bariven account within the meaning of the sales-incentive plan. Schenker remains free to pursue this issue on remand. (*Id*. at n. 3.)

The Court of Appeals stated it found no error in this court's determination that Plaintiff's employment was at-will and that her continued employment was a condition entirely within Schenker's control. (*Id*. at p. 8.) However, the Court of Appeals stated this court had failed to "determine expressly at what point Plaintiff had an accrued right to a sales commission," which that Court found "critical to resolving whether Plaintiff is entitled to a commission on at least a portion of the gross profits earned in 1999 from the Bariven account." (*Id*.) The Court noted the Sales Program, or sales incentive plan, is silent on the issue of *accrual*, but proposed three theoretically possible moments of accrual

> First, the right to a commission may accrue under the plan at the point at which an account begins to show a gross profit. Second, the right to a commission may accrue only at the point a commission is calculated according to the figures of Schenker's accounting system. And third, the right might be said to accrue only at the point that each quarterly payment on the commission is to be made. (*Id*.)

The court then resolved that because the latter two scenarios could be dependent on continued employment, they would have been controlled by a theory of at-will employment and warranted the dismissal of Plaintiff's claim; however, the court noted that "if the right to a sales commission accrued under the incentive plan at the time that an account began to show a profit, with only

payment delayed until a future date, then that payment, more akin to a salary, would not be conditioned on continued employment, and Schenker's promise to pay would not be illusory." (*Id*.) The Court granted that Plaintiff's assertion that she was entitled to commissions after November 1999 had "no merit" due to her at-will status. (*Id*. at n. 5.) Therefore, the Court noted the "reasonable possibility that Plaintiff's right to a sales commission accrued... at the point at which the Bariven account showed a gross profit." (*Id*. at 10.)

At the time of this court's first summary judgment (Doc. 57, p. 9), on appeal (Doc. 65, p. 4), and at present, it has remained unrebutted that the Bariven contract did not return a profit in 1998. By July 1999, the account had returned a gross profit of $1,018,510, though it appears that the account had produced gross profit of $610,000 by April 30, 1999 (Doc. 57, p. 27; *citing* Doc. 43, Exh. 35 (under seal)).

**IV          The Current Motion for Summary Judgment After Appeal**

As the court approaches the arguments of the parties on this second set of summary judgment motions, the court is struck by the lack of citations to precedent and legal authority shaping the presented facts on the basis of a contractual theory. In very lengthy motions, both sides have provided the court with the facts, delving into the patterns of practice at Schenker.

Schenker asserts that neither Plaintiff herself nor the company considered her to be the salesperson to receive commissions on the Bariven Account. Schenker discusses the creation of a "Bariven Branch," a small team devoted to the Bariven Account and headed by Patrick Jacob and *not* Jourdan, which team took responsibility for implementing the newly brokered deal with Bariven. (Doc. 105, pp. 12-20.) Schenker describes what it deems the circumstances under which Plaintiff was eventually taken off the Bariven project on August 21, 1998, subsequent to which Jourdan wrote an email expressing her "distress." (*Id*. at pp. 16-20.) Schenker describes that the Bariven Account, under the terms of its initial contract was losing money, and that a new shipping contract with Bariven was renegotiated between August 18, 1998, and 1999, and that Plaintiff was

not part of the team that renegotiated the new contract rates. (*Id*. at pp. 20-21.) Schenker asserts that the Bariven Account was not of the *type* or *kind* which garnered commissions to salespersons because it was a global or house account. (*Id*. at pp. 21-23.) Schenker also points to evidence which it asserts shows Plaintiff did not complete the forms opening the Bariven Account, and was not listed there as the salesperson. (*Id*. at 23-24.) Furthermore, Schenker details that after Plaintiff's removal from Bariven, Plaintiffs' attempts to receive credit or commissions on accounts to which she was assigned show a complete absence of activity with respect to Bariven; Plaintiff did not attempt to obtain commissions on Bariven, did not list Bariven as a customer in the 1998 period, and her correspondence never references her work on Bariven, facts which are inconsistent with her later belief that Bariven was her customer for purposes of commissions. (*Id*. at pp. 23-35.) On September 1, 1999, after Plaintiff had received her commissions for 1998, Plaintiff inquired for the first time why she had not received any credit for Bariven, actions at odds with her prior and subsequent course of conduct argues Schenker. (*Id*. at pp. 35-38.) Schenker makes other points and arguments, without citing virtually any legal authority regarding a contract theory under which Schenker is moving, but the brunt of Schenker's argument appears to be on page 38 of its motion: it seeks reversal of this court's earlier determination that a material issue of fact was posed as to whether Plaintiff owned or was assigned the Bariven account. (*Id*. at p. 38; *citing* Doc. 57, p. 34.) Schenker now relies on what it believes are undisputed material facts that Plaintiff's course of conduct evidence that she was not to be given the Bariven Account for purposes of obtaining commissions as a salesperson.

Plaintiff admits that evidence of trade custom may be admitted to aid in the interpretation of a contract if the contract is ambiguous, imprecise, incomplete, or inconsistent. (Doc. 115, pp. 29-30; *citing Miller v. Gray*, 149 S.W.2d 582, 583 (Tex. 1941)). As stated by that court, "however, ... evidence of custom is admissible only to explain an ambiguous contract or to add to it an element not in contravention of its terms; but such evidence is never admissible to contradict the plain unambiguous covenants and agreements expressed in the contract itself." *Id*.

The difficulty with Schenkers' position flows from its inability to cite this court to applicable precedent that would allow the court to determine whether or not, as a matter of law, Plaintiff was removed from the contract under circumstances which deprived her from accruing future commissions on the Bariven Account prior to her November 1999 termination. Plaintiff may in fact have been removed from working on the Account, but Schenker provides only *facts* which make it more likely than not that both prior to and after her removal, if she was in fact removed, Plaintiff behaved in such a way or conducted her affairs in such a way at Schenker as to make it more probable than not that (a) she never believed the Sales Program applied to award her efforts in helping to obtain to the Bariven Account, or (b) that she in fact believed that the Sales Program no longer applied to her after her alleged removal from the account.

The court has previously discussed the ambiguity resulting from the use of the word "necessary" in the Sales Program.[1] If in fact, Plaintiff *was* removed from the Account, because it undisputed that the Account showed no profit until after she was removed, the question becomes whether she could have *accrued* any commissions whatsoever if she was no longer *on* the Account when it began to show profits in 1999. The answer to this, as Schenker argues, is indisputably no. (*See* Doc. 105, pp. 46-51.) Regardless of what conditions may have deemed a management action "necessary," if in fact Plaintiff was removed from the account, she would not be entitled to receive commissions on gross profits; and because there were no gross profits prior to her removal, indeed apparently until well after her alleged removal, she could not claim those gross profits if Bariven was no longer her customer.

Plaintiff responds that "nowhere in Defendant's thousands of pages of documents is there *any* writing of any kind removing Plaintiff from this account." (Doc. 117, p. 14.) Though Plaintiff admits she was later removed from the day to day operations of the Bariven Account, she argues that she was still promised commissions and told to do public relations work with the client.

---

[1] "[A] sales person maintains an account for as long as management deems necessary." (Doc. 31, Exh. 4.)

(*Id.*)  In fact she stated in an email that she was directed to go back into sales in September 1998. (Doc. 115, Cosman Aff., Exh. C, Exhibit to Affidavit No. 21, Jourdan 001140.)  She further argues that after returning to work on sales, she did not add Bariven to her customer list because she had heard it did not make any profit.  (Doc. 117 at p. 20.)  Plaintiff argues that her actions on the Bariven Account were not different from the way she handled other accounts, except that in other situations she was paid commissions.  (*Id.* at pp. 23-25.)  Plaintiff continues to argue that the ambiguity of the contract allows for the interpretation that she was still owed commissions.

Though the interpretation of a contract for purposes of determining ambiguity is a question of law for the court, *Commercial Union Ins. Co. v. Martinez*, 635 S.W.2d 611, 613 (Tex. App. Dallas 1982), writ refused), "[u]nder Texas law, questions about the terms of a contract are routinely treated as factual in nature," and would hence fall to the province of the trier of fact. *Paniagua v. City of Galveston*, 995 F.2d 1310, n. 2 (5th Cir. 1993).  Because the factual evidence presented by both sides conflicts, the court cannot decide that dispute as a matter of law without clear precedent that the facts can only be interpreted one way under the documents.  Accordingly, Schenker's Motion for Summary Judgment (Doc. 105) must be DENIED and this case tried so as to allow the trier of fact to determine any disputed questions of fact.

**V.         Schenker's Motion for Sanctions**

Having reviewed Schenker's Motion for Sanctions (Doc. 111), the court will DENY such Motion.

**VI.         Schenker's Motion in Limine**

Schenker had previously made a Motion in Limine (Doc. 104) to bar any evidence from the jury which references "any alleged sexual harassment of Cosman by any of her former colleagues employed by Schenker," and any reference "to gratuities, payments, or commercial bribery by anyone acting on behalf of Schenker or on behalf of one of its clients."  The Court

GRANTS this motion IN PART such that mention of sexual harassment will not be allowed because it is prejudicial and unrelated to the central subject matter of this suit which involves a breach of contract. The court will DENY IN PART the Motion with respect to the gratuities and payments issue, but will GRANT Schenker the opportunity to reurge this motion at a time nearer to trial.

**VII.     Schenker's Motion for Clarification and to Expedite**

In its Motion for Clarification, Schenker requested the court to clarify and amend its February 18, 2005 Order to reflect that Schenker's reply brief be due no later than April 29, 2005. (Doc. 121-1.) The court subsequently provided an answer to this request, asking that it be filed within 20 days of its Order of February 25, 2005. (Doc. 122) The request for expedited consideration (Doc. 121-2) is now MOOT.

**VIII.    Conclusion**

Accordingly it is hereby

ORDERED that Defendant, Schenker International, Inc.'s Motion for Summary Judgment (Doc. 105) is DENIED; it is further

ORDERED that Schenker International, Inc.'s Motion in Limine (Doc. 104) is GRANTED IN PART such that mention of sexual harassment of Plaintiff will not be allowed otherwise the court will DENY IN PART the Motion with respect to the gratuities and payments issue, but will GRANT Schenker opportunity to reurge this motion at time of trial; it is further

ORDERED that Schenker International, Inc.'s Motion for Sanctions (Doc. 111) is DENIED; and, it is further

ORDERED that Schenker International, Inc.'s Motions for Clarification of Order (Doc's 121-1) and for Expedited Consideration of such Motion (Doc. 121-2) are DENIED and MOOT, respectively.

SIGNED at Houston, Texas, this 30th day of September, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE