UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |  | |
|---|---|---|---|
| HILDA S JOURDAN, | § | | |
| | § | | |
| Plaintiff, | § | | |
| VS. | § | CIVIL ACTION NO. H-99-4081 | |
| | § | | |
| SCHENKER INTERNATIONAL INC, | § | | |
| | § | | |
| Defendant. | § | | |

## ORDER GRANTING JUDGMENT AS A MATTER OF LAW

Before the court is a motion for judgment as a matter of law and for a new trial brought by the Defendant, Schenker Internaitonal, Inc. (Schenker). Doc. 177. The Plaintiff, Hilda S. Jourdan (Jourdan).[1] filed a response. Doc. 180. Schenker originally moved to dismiss Jourdan's case at the close of her case and thus, the motion is a renewed motion. Jourdan does not dispute that the motion has been filed in a timely fashion and proper manner.

Jourdan sued Schenker because she believes Schenker owes her a commission under Schenker's 1998 Sales Incentive Program (the "Sales Program") for work she performed while developing an account with PDVSA Services, Inc. (PDVSA), the agent for a Venezuelan oil company, Bariven S.A. ("Bariven"). Doc. 177, Exh. 11.[2] She sought $121,128.00 in damages. Schenker did not contest her calculation of damages. Doc. 177 at 43.

On March 14, 2006, the jury returned a verdict in Jourdan's favor and awarded her

---

[1] Since filing suit, Jourdan has married and changed her name to Cosman. Previous pleadings and filings have referred to her as "Cosman." However, all jury verdict forms refer to her as "Jourdan," as do most references to her in the record. Therefore, this order will identify the Plaintiff by the name she used at the time she filed the suit, "Jourdan."

[2] Because most of the testimony at trial described this account as the PDVSA Account, this order describes it as the PDVSA Account, even though various court documents, including a decision issued by the Fifth Circuit Court of Appeals, refer to it as the Bariven Account.

$66,773.63. The jury supported its award with three specific findings. First, the jury found "that Plaintiff Hilda S. 'Jolie' Jourdan was the Schenker International Inc. commissioned salesperson designated to receive sales commissions on the Bariven/PDVSA Account in 1999." Doc. 166, Special Interrogatory #1. Second, the jury declined to find "that Plaintiff Hilda S. 'Jolie' Jourdan was removed as the Bariven/PDVSA commission salesperson in August 1998." Doc. 166, Special Interrogatory #2. Third, the jury found "from a preponderance of the evidence that Hilda S. Jourdan was entitled under the Schenker International Inc. 1998 Sales Incentive Plan to be paid 1999 commissions on the Bariven/PDVSA Account." Doc. 166, Special Interrogatory #3. Schenker challenges each of these findings in its motion. Schenker's motion is GRANTED. Doc. 177.

## I. LEGAL STANDARD

### A. RULE 50

Schenker moved for a judgment in its favor notwithstanding the jury's verdict pursuant to Rule 50 which provides: "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim … that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). The Fifth Circuit has interpreted this rule to mean that, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim. In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture." *Anthony v. Chevron USA, Inc.,* 284 F.3d 578, 583 (5th Cir. 2002). Jourdan presented evidence that she was a saleswoman and that she performed a great

deal of work to persuade PDVSA to use Schenker for its freight forwarding needs. She also presented evidence that many people knew she had performed this work. She did not, however, present evidence that she complied with the specific requirements of the Sales Program, and the jury had no basis for finding that the Sales Program was actually a binding, rather than an illusory, contract.

### B. MANDATE RULE

The parties tried this case against the backdrop of an opinion issued by the Fifth Circuit Court of Appeals. *Jourdan v. Schenker Int'l,* 71 Fed. Appx. 308, 311 (5th Cir. 2003). Under "the mandate rule," a variation of the "law of the case" doctrine, a district court must conduct all further proceedings according to any opinion issued by its circuit court regarding that specific case and, "[a]bsent exceptional circumstances," may not entertain "relitigation of issues expressly or impliedly decided by the appellate court." *U.S. v. Lee,* 358 F.3d 315, 321 (5th Cir. 2004) (citations omitted). Thus, "the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Id; see also Eason v. Thaler,* 73 F.3d 1322, 1329 (5th Cir. 1996); and *Daly v. Sprague,* 742 F.2d 896, 900-01 (5th Cir.1984). In *Eason,* the Fifth Circuit held that a prisoner had abandoned any right to recover damages related to a gas leak in the prison in which he was incarcerated because he had not raised the allegation during a previous appeal, even though he had included the allegation in his original complaint. Thus, this court's analysis of the trial proceedings begins by limiting the legal theories that it will analyze to those considered by the Court of Appeals. Next, this court must determine how to follow the methods of analysis dictated by the Court of Appeals.

On appeal, Jourdan pursued only a single legal theory of recovery. According to

reasoning in *Eason,* the scope of Jourdan's appeal limits the legal theories that might support Jourdan's case to that single legal theory. Thus, Jourdan must establish that the Sales Program constitutes an enforceable contract and that Schenker breached that contract.

Additionally, the Fifth Circuit's opinion defined how Jourdan could establish the Sales Program as a binding contract and left Schenker free to argue that Jourdan had failed to comply with it. The Fifth Circuit explained that, although the Sales Program promised Jourdan a commission, it was "silent as to when a right to an incentive payment accrues." *Jourdan,* 71 Fed. Appx. at 311. The opinion identified three points at which the right to receive a commission might accrue. It concluded that Jourdan could prevail on her cause of action for breach of contract only if the right to receive the commission under the Sales Plan accrued when the PDVSA Account began to show a profit because "[a]ny promise made by either [the] employer or employee that depends on an additional period of employment is illusory" and unenforceable. *Id.* citing *Light v. Centel Cellular Co. of Texas,* 883 S.W.2d 642, 644-45 (Tex. 1994). Specifically:

> An examination of the language of the [Sales Program] indicates three theoretically possible points at which a right to a sales commission might be said to have accrued. First, the right to a commission may accrue under the [Sales Program] at the point at which an account begins to show a gross profit. Second, the right to a commission may accrue only at the point a commission is calculated according to the figures of Schenker's accounting system. And third, the right might be said to accrue only at the point that each quarterly payment on the commission is to be made.
>
> If the right to a sales commission under the [Sales Program] accrued only at the

> time that the commission was either calculated or actually paid, then the payment of a commission would necessarily be conditioned on continued employment to the point of calculation or payment, a condition over which Schenker exercised near-complete control. Any promise to pay that commission would, therefore, be illusory, and Schenker would be entitled to summary judgment on Jourdan's contract claim. If, however, the right to a sales commission accrued under the [Sales Program] at the time that an account began to show a profit, with only payment delayed until a future date, then that payment, more akin to a salary, would not be conditioned on continued employment, and Schenker's promise to pay would not be illusory.

*Id.* at 311-12.

This portion of the Fifth Circuit's opinion placed on Jourdan the burden of proving that she accrued the right to receive a commission under the Sales Program when the PDVSA Account showed a profit. The opinion also allowed Schenker to prove that it never formally assigned the PDVSA Account to Jourdan pursuant to the Sales Program or to prove that it removed her from dealing with the PDVSA Account.

### ANALYSIS OF JURY FINDINGS

#### A. SPECIAL INTERROGATORY 1

This court overturns the jury's verdict because that verdict appears to have disregarded the technicalities of the Sales Program on which the Fifth Circuit based its opinion. First, the jury found "that Plaintiff Hilda S. 'Jolie' Jourdan was the Schenker International Inc. commissioned salesperson designated to receive sales commissions on the Bariven/PDVSA Account in 1999." Doc. 166, Special Interrogatory #1. This finding is based on a misunderstanding of the Sales Program.

The Sales Program was not an informal understanding between Schenker and its employees. Instead, it was a five-page written document issued by Manfred Engst, Chief Operating Officer of Schenker, and Michael Bujold, the former Vice President of Sales for

Schenker. Doc. 177, Exh. 41. The Sales Program described its purpose as "to simplify the reporting and verification process[.]" Doc. 177, Exh. 41. Bujold testified that the Sales Program imposed a formal reporting program "to ensure that proper credit is given to salespeople" and contained "stipulations of what [sales personnel] have to do to put the information through … Schenker's accounting network." Doc. 177, Exh. 4B at 19:15-19:24.

The Sales Program placed two responsibilities on Schenker's sales force to ensure that the proper employees received the proper credit. First, "Sales people are responsible to tell operations the 'account number' (Numbers verification will be accomplished using the account profitability number for all accounts)" and, second, branch managers were responsible "to ensure proper entry of account number." Doc. 177, Exh. 41.

Pursuant to the Fifth Circuit's decision and the mandate rule, the Sales Program governed all possible rights that sales personnel might possess to receive commissions. Thus, the court must examine the record for evidence that Jourdan complied with the Sales Program, as written. Evidence that would establish either an oral contract whose terms deviated from the Sales Program or the right to recover under a theory of promissory estoppel will not support the jury's verdict. Not only would permitting Jourdan to recover under an oral contract or an action for promissory estoppel violate the mandate rule, it would also inflict *exactly* the harm, inaccurately recorded claims for commissions, that the Sales Program was implemented to prevent.

Jourdan presented evidence that demonstrated that she had sent some documents to Alex Cruize, an employee responsible for recording which sales personnel were assigned to which accounts. Jourdan also presented evidence that many other people considered her to be the sales person assigned to the PDVSA Account and that she performed a tremendous amount of work on the PDVSA Account. She even presented evidence that she had been instructed to "take

ownership" of the PDVSA Account. Doc. 177, Exh. 11B.

She did not testify, however, that she told operations the account number. Accordingly, Jourdan presented no evidence that she complied with one of the few requirements of the Sales Program. In fact, the relevant form describes the PDVSA Account as assigned to no one. Doc. 177, Exh. 18. Thus, although a rational jury could have found that Jourdan was assigned to the PDVSA Account in a way that deviated from the Sales Program, no rational juror could have found that Jourdan was assigned to the PDVSA Account in a manner that complied with the Sales Program.

### B. SPECIAL INTERROGATORY 2

Second, the jury declined to find "that Plaintiff Hilda S. 'Jolie' Jourdan was removed as the Bariven/PDVSA commission salesperson in August 1998." Doc. 166, Special Interrogatory #2. Because the jury could not have found that Jourdan was designated as the sales woman for the PDVSA Account for the purpose of receiving a commission pursuant to the Sales Program, it should not have reached the question of whether Schenker removed Jourdan from the PDVSA Account, but if the Sales Program might be construed to permit the assignment of sales personnel on an informal basis, then Jourdan had been removed from the PDVSA Account by Schenker's management.

The Sales Program stated "that a sales person maintains an account for as long as management deems necessary." Doc. 177, Exh. 41. The Sales Program also contemplated that some accounts would be "branch accounts" to which Schenker did not assign any particular sales person, but reserved for newly hired sales personnel. Id. ("New hired sales people can be given existing branch accounts for development and growth by their branch and/or sales managers.") Jourdan acknowledged that "I am no longer to be involved with this account but to go back and

pursue my sales efforts." Doc. 177, Exh. 19 at 22. Jourdan's testimony that she later worked on the account is not evidence that she was entitled to a commission or that she was in some way reassigned to the PDVSA Account. The Sales Program did not permit reassignment to an account by a process akin to adverse possession. Instead, she was instructed not to deal with the PDVSA Account, a statement consistent with management no longer deeming her maintenance of the account necessary.

### C. SPECIAL INTERROGATORY 3

Third, the jury found "from a preponderance of the evidence that Hilda S. Jourdan was entitled under the Schenker International Inc.1998 Sales Incentive Plan to be paid 1999 commissions on the Bariven/PDVSA Account." Doc. 166, Special Interrogatory #3. By implication, the jury found that the right to receive the commission accrued when the PDVSA Account showed a profit.

On the point of when the right to a commission accrued, Jourdan, as the plaintiff, bore the burden of proof. The trial record, however, is devoid of almost any evidence on the point. There is no evidence that the commission vested when the PDVSA Account began to show a gross profit. As to Jourdan, the Sales Program was an illusory and, therefore, unenforceable contract. Her compensation was the same as any at will employee's compensation, and her right to receive it terminated when her employment ended.

The only testimony in the record suggests, although not in any definitive terms, that the right to receive a commission did not vest when the PDVSA Account became profitable. Donna Hanson, an employee of Schenker, testified that "commissions payable under the 1998 sales plan … weren't … a vested benefit." Doc. 172, 1023:17-1023:19. See generally, Doc. 172, 1023:1-1024:6 and Doc. 172, 1068:5-1068:16. Hanson acknowledged that the Sales Program did not

state when the right to receive a commission vested, but explained that Schenker's employees knew that the right to receive a commission vested no earlier than the time at which Schenker calculated the commission. Doc. 172, 1065:17-1066:12.

Supporting Hanson's testimony, Jourdan admitted that it was "correct" that the "the person who left the company would not get the commission[.]" Doc. 155, 569:20-569:22; see generally Doc. 155, 569:7-570:5 and 790:12-791:3. Thus, Jourdan's testimony supported the conclusion that the right to receive the commission did not vest before Schenker calculated the commission, even though paying the commission may not have been discretionary if Schenker chose to employ the sales person at the time it calculated the commission.

Jourdan argued that commissions under the Sales Program were not discretionary, but the Fifth Circuit held that it is irrelevant whether the commission was discretionary because Jourdan's employment was discretionary, and Schenker had the right to terminate her at will. If Jourdan's employment ended before the right to receive the commission vested, then Schenker also terminated Jourdan's right to receive a commission when it discharged her.

Because Jourdan did not establish that her right to receive a commission under the Sales Program vested when the PDVSA Account began to show a profit, the jury's finding that she "was entitled under the Schenker International Inc. 1998 Sales Incentive Plan to be paid 1999 commissions on the Bariven/PDVSA Account" can be supported only by speculation. Because Jourdan did not establish that the Schenker International Inc. 1998 Sales Incentive Plan was an enforceable contract as to her, she necessarily cannot establish her entitlement to a commission under that contract.

**ORDER**

Accordingly, it is hereby ORDERED:

(1) The motion for judgment as a matter of law brought by the Defendant is GRANTED and the Defendant is awarded its costs. Doc. 177.

(2) All other motions are terminated as moot.

SIGNED at Houston, Texas, this 31st day of October 2006.

*[signature]*

Melinda Harmon
United States District Judge